IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                  CR No. 01-1652 MV

JESUS GANDARA-SALINAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Suppress Evidence **[Doc. No. 25]** and Amended Motion to Suppress **[Doc. No. 31]**. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that the motions are well taken and will be **GRANTED**.

### BACKGROUND

On August 30, 2001, at approximately 7:15 a.m., U.S. Border Patrol Agent David Collier observed Defendant in a blue and silver pickup truck with Chihuahua, Mexico license plates, traveling south on U.S. Highway 54. After following the vehicle for some miles, Agent Collier conducted an immigration stop. Defendant consented to a canine search, and the dog alerted to the gas tank area. Defendant was then arrested and taken to the U.S. Border Patrol Station in

Alamogordo, New Mexico, where agents searched Defendant's vehicle pursuant to a search warrant. Agents found 42 bundles of marijuana, weighing approximately 150.5 pounds, in the gas tank and spare tire of Defendant's vehicle.

On December 28, 2001, Defendant moved the Court to suppress the evidence seized from the search of his vehicle on the grounds that Agent Collier did not have the requisite reasonable suspicion to conduct an immigration stop **[Doc. No. 25]**. The Court heard oral arguments on February 26, 2002, at which time it took the motion under advisement. Defendant then filed an Amended Motion to Suppress Evidence on February 26, 2002 **[Doc. No. 31]**. Upon request by the government for a supplementary evidentiary hearing **[Doc. No. 36]**, the Court heard additional testimony on May 23, 2002, and again took the motion under advisement.

## STANDARD

The Fourth Amendment requires a finding of "reasonable suspicion" in order to conduct roving border patrol stops. *See United States v. Brignoni-Ponce*, 422 U.S. 873 (1975). Thus, border patrol agents "may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" of criminal activity. *United States v. Monsisvais*, 907 F.2d 987, 989–990 (10th Cir. 1990) (quoting *Brignoni-Ponce*, 422 U.S. at 884). A court may consider, *inter alia*, the following factors in determining whether or not an immigration stop is supported by reasonable suspicion:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious

attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded."

*Monsisvais*, 907 F.2d at 900 (citing *Brignoni-Ponce*, 422 U.S. at 884–85).

Moreover, "[i]n determining whether reasonable suspicion exists to justify stopping a vehicle, a court must consider the totality of circumstances." *United States v. De La Cruz-Tapia*, 162 F.3d 1275, 1277 (10th Cir. 1998) (quotations and citations omitted). A court may not evaluate and reject factors in "isolation from each other" when considering the "totality of circumstances." *United States v. Arvizu*, 122 S. Ct. 744, 751 (2002). Rather, all of the factors constituting the totality of circumstances must be considered together even if individual factors may have an innocent explanation or are more probative than others. *See id.* at 753.

"In all situations the officer is entitled to assess the facts in light of his experience . . . ." *Brignoni-Ponce*, 422 U.S. at 885. Thus, "deference is to be accorded to a law enforcement officer's ability to distinguish between innocent and suspicious actions. . . . However, the officer must articulate more than an inchoate and unparticularized suspicion or hunch." *De La Cruz-Tapia*, 162 F.3d at 1277 (quotations and citations omitted).

## DISCUSSION

The "totality of circumstances" under examination in this case are as follows: (1) Defendant was traveling on a highway that did not have a checkpoint for a two month period and was approximately 70–75 miles from the Mexican border; (2) Agent Collier was driving an unmarked border patrol vehicle with police lights and a dog cage; (3) border patrol had received information that because Highway 54 did not have a checkpoint, it was being used for smuggling

aliens and narcotics; (4) Defendant was driving a Chevy truck that is commonly used by drug traffickers; (5) Agent Collier observed Defendant turn and watch as he passed Defendant's vehicle, but then noted that Defendant did *not* look at Agent Collier when he pulled up next to Defendant; (6) Defendant's vehicle had license plates from Chihuahua, Mexico; (7) Defendant's vehicle entered the United States at the Ysleta Port of Entry on the previous day; (8) Defendant was traveling slower than the rest of the traffic; (9) Agent Collier noticed that Defendant's spare tire, which was mounted underneath the vehicle, appeared larger than the other tires and cleaner than the rest of the truck underneath; and (10) Defendant turned his signal on but did not turn.[1] (Transcript of Proceedings on Motion to Suppress, Vol. I, Feb. 26, 2002 ("Feb. 26 Tr."), at 9–30.) Agent Collier also testified that Defendant's hands were shaking during the immigration stop, which further raised his suspicions. Because the Fourth Amendment requires a finding of reasonable suspicion *before* an immigration stop, the Court finds such evidence irrelevant with respect to this motion. *See United States v. Moreno-Chaparro*, 180 F.3d 629, 632 (5th Cir. 1999) ("Obviously, only those factors known to the officer at the time of the stop can be considered when determining whether the stop was reasonable.").

      First of all, the Court finds the testimony of Agent Collier regarding the size and condition of Defendant's spare tire not to be a persuasive factor in support of reasonable suspicion. The Court finds it highly improbable that Agent Collier could have made a reasonable comparison

---

[1] Agent Collier explicitly stated that he had conducted an immigration stop, not a traffic stop. (Feb. 26 Tr. at 57.) Moreover, the government has never asserted that using a turn signal without actually turning was a violation of any traffic law in the State of New Mexico that would have constituted probable cause to conduct a traffic stop. *See United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998) (holding that since "having a turn signal on is not a violation of Texas law, no objective basis for probable cause justified" the traffic stop).

between Defendant's spare tire and other four tires, including the tire treads, while traveling at speeds up to 65 miles per hour. The Court itself has been unable to determine from review of the two photographs whether the spare tire was so large and clean as to raise legitimate suspicions. For example, from the photograph of Defendant's vehicle, the Court cannot even determine the size of the other four tires, let alone conclude that the spare tire was noticeably larger than the other four tires, and the truck itself did not appear to be dirty whatsoever. Agent Collier himself did not know and could not tell whether or not the spare tire was, in fact, underneath the vehicle in the photograph of the truck, which was admitted as a government exhibit. (Transcript of Proceedings on Motion to Suppress, Vol. II, May 23, 2002, at 7–8.) While the Court acknowledges Agent Collier's testimony that the photograph does not accurately represent his vantage point during the events in question, he easily could have taken a photograph of that vantage point. Without any evidence to indicate that Agent Collier could, indeed, make a reasonably accurate estimate as to the size and cleanliness of the spare tire while driving on a state highway, the Court does not find such testimony credible.

The fact that Defendant's vehicle was a Chevy truck is also of limited significance. *See De La Cruz-Tapia*, 162 F.3d at 1278; *see also Moreno-Chaparro*, 180 F.3d at 632–33. Although Agent Collier might have reason to believe Chevy trucks are commonly used to smuggle narcotics (Feb. 26 Tr. at 17), that simple belief cannot support stops of all Chevy trucks without being more suspicious. The Court notes that many people in our rural communities use Chevy trucks for legitimate purposes and should not sacrifice their Fourth Amendment rights due to their choice of vehicle.

Likewise, there are plenty of travelers from Chihuahua, Mexico, who cross the border into the United States every day for legitimate purposes. A border community, after all, has families living in close proximity, separated only by a political boundary. Although Agent Collier discovered that Defendant entered the United States the previous day, he had no cause to believe that the crossing was illegal or for illegal reasons. It is completely natural that a vehicle with Chihuahua license plates crossed the border at some time, so the result of Agent Collier's border check should have come as no surprise. The Court cannot condone immigration stops of vehicles from Mexico, as opposed to American vehicles, without additional circumstances to support reasonable suspicion.

Moreover, the Court is not persuaded by Agent Collier's testimony that Defendant was traveling at speeds "slower" than the rest of the traffic. At no time during Agent Collier's testimony did he indicate that Defendant was driving below the posted speed limit, and the Court finds nothing unusual in driving slower when the driver believes he is being followed by a government vehicle, if in fact he knew that Agent Collier's unmarked car was a government vehicle. Furthermore, Agent Collier never stated that Defendant's speed decreased dramatically at any time, which might have raised more suspicion.

Another factor considered by the Court is the temporary closure of the border checkpoint on Highway 54 at the time of the events at issue, and that the highway was 70–75 miles from the border. While the Court acknowledges the information received by border patrol regarding the use of Highway 54 by drug traffickers, the closing of the checkpoint station was through no fault of the drivers who traversed the highway and cannot be the basis for stopping legitimate traffic. The Court empathizes with border patrol's concerns about increased trafficking due to this

closure, but it is "not willing to sacrifice the constitutional protections of drivers to lessen the perceived adverse impact" resulting from border patrol's decision to temporarily close the checkpoint station. *Moreno-Chaparro*, 180 F.3d at 633. Similarly, the Court is not persuaded by the distance of the highway from the Mexican border without more suspicious circumstances given the fact that the border area, like other areas of the United States, has legitimate traffic as well as drug trafficking activity.

During his testimony, Agent Collier found suspicious the fact that Defendant "turned his head and watched" him completely pass Defendant's vehicle (Feb. 26 Tr. at 17), but then was also suspicious by the fact that Defendant "never turned to look" at him whenever he pulled up next to Defendant's vehicle (Feb. 26 Tr. at 27). In essence, Agent Collier believes it is suspicious for a driver both to look at him and not to look at him—the kind of "heads I win, tails you lose" argument of which circuits have disapproved. *De La Cruz-Tapia*, 162 F.3d at 1278 n.1 (quoting *United States v. Garcia-Camacho*, 53 F.3d 244, 247 (9th Cir. 1995)); *see also Moreno-Chaparro*, 180 F.3d at 632 ("[W]hether a driver looks at an officer or fails to look at an officer, taken alone or in combination with other factors, should be accorded little weight. To conclude otherwise would put the officers in a classic "heads I win, tails you lose" position. The driver, of course, can only lose." (quotations and footnotes omitted)). Furthermore, the Court is not fully convinced that Defendant even knew Agent Collier was a border patrol agent at that time, given the fact that Agent Collier was driving an unmarked vehicle. While the Court notes that Agent Collier's vehicle had police lights, as well as a dog cage, it is unclear why a vehicle would be unmarked if such characteristics would always indicate that it is a law enforcement vehicle, let alone a border patrol vehicle.

Agent Collier himself did not believe he had reasonable suspicion to stop Defendant's vehicle until he observed Defendant turn on his signal without turning (Feb. 26 Tr. at 28–29)—the final factor to be considered in the "totality of circumstances." As already stated above, neither party has asserted that such behavior is a violation of any traffic law in the State of New Mexico. Rather, the government contends that behaving in such a way is inherently suspicious in and of itself. The Court, on the other hand, disagrees. There is nothing suspicious in turning on a right turn signal, and then turning it off, especially if Defendant did not know he was being followed by a border patrol agent. Such behavior occurs several times on a highway and does not demonstrate reasonable suspicion, even in combination with all of the factors discussed above.

## CONCLUSION

While the Court recognizes its duty to defer to the border patrol agent's expertise in distinguishing between innocent and suspicious behavior, the facts of this case—considered in combination with each other—do not provide the reasonable suspicion necessary to perform an immigration stop. Rather, Agent Collier's observations constitute nothing more than an "inchoate and unparticularized suspicion or hunch" of innocuous events that could have occurred to any innocent traveler. *See De La Cruz Tapia*, 162 F.3d at 1277. The Court cannot allow such hunches to become bases for infringing upon a person's constitutional right to be free from seizure. Moreover, the government has the burden of demonstrating reasonable suspicion to justify the immigration stop, and the Court cannot conclude that the burden has been met in this case.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence **[Doc. No. 25]** and Amended Motion to Suppress **[Doc. No. 31]** are hereby **GRANTED**.

Dated this 26th day of July, 2002.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney(s) for Plaintiff(s):
Mark D'Antonio

Attorney(s) for Defendant(s):
Joseph (Sib) Abraham, Jr.